**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**CARMEN D FERGUSON**                    **CASE NO.  3:21-CV-01104**

**VERSUS**                               **JUDGE TERRY A. DOUGHTY**

**DUSTY GATES ET AL**                    **MAG. JUDGE KAYLA D. MCCLUSKY**

**RULING**

Pending before the Court are multiple motions. The first is a Motion for Summary Judgment [Doc. No. 39] filed by Defendants Warden Donnie Adams ("Warden Adams") and Union Parish Detention Center ("UPDC"). Also pending before the Court is a Motion for Summary Judgment [Doc. No. 40] filed by Defendants Sheriff Dusty Gates ("Sheriff Gates"), Cade Nolan ("Nolan"), and Detective Earl Roberts ("Detective Roberts").

The Motions are unopposed.

For the following reasons, the Motions for Summary Judgment [Doc. Nos. 39 and 40] are **GRANTED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On September 24, 2018, Union Parish Sheriff's Office ("UPSO") Detective Roberts completed an affidavit for arrest warrant (the "Affidavit"), wherein he requested that a warrant be issued for the arrest of Carmen D. Ferguson ("Ferguson") on the charge of simple kidnapping.[1] The affidavit detailed that on August 17, 2018, UPSO received a call from Crystal Hefner ("Hefner"), who is a caregiver for Danny Johnson ("Johnson"), who suffers from dementia and requires a full-time sitter.  Hefner stated that the reason for the call was out of concern for Johnson, who she saw get into an unfamiliar red car. She told the dispatcher that she was finally able to

_____
[1] [Doc. No. 39-5, p. 7]

reach Johnson by phone, and he told her he was at West Monroe Walmart. Hefner then went to the West Monroe Walmart and saw the red car that she saw Johnson get into earlier. She saw a white female, two white males, and a small boy surrounding the car. Hefner took photos of the car and the people around it. Hefner then followed the female into the store to inquire about why Johnson was getting into her car. The female asserted that she did not know what Hefner was talking about, and she told Hefner that she did not know who Johnson was. Simultaneously, the male who remained in the vehicle drove away, leaving Johnson in the parking lot. When Detective Roberts and UPSO Detective Mike Bryan ("Detective Bryan") spoke to Johnson, he told them that he did not know the people who had picked him up and brought him to Walmart. He also told the detectives that the same people stole $80.00 from his wallet.[2]

An eyewitness was able to get the license plate number on the red car. The vehicle was registered to an Amy Guthrie. Amy Guthrie advised the detectives that her ex-husband, William Guthrie ("Guthrie"), was in possession of that car. Amy Guthrie also told the detectives that the female in the photos Hefner had taken was Tiera Mooney ("Mooney"), who is Guthrie's girlfriend. Mooney was arrested and questioned and denied any involvement. She told the detectives that Guthrie told her that he and a female named Carmen kidnapped the man.[3]

On September 14, 2018, Detective Roberts learned that Guthrie had been arrested on unrelated charges and was detained at Ouachita Correctional Center. On that same day, Detective Roberts spoke to Guthrie, who, according to an Affidavit, stated that Carmen D. Ferguson ("Ferguson") was his girlfriend. She made Guthrie drive to Rocky Branch, and this is where they

---

[2] [Doc. No. 39-5, p. 7]
[3] [Id.]

2

picked up Johnson. Guthrie told the detective that Ferguson had done this before the current incident.[4]

Based on this information, Detective Roberts, along with his partner Detective Nolan, requested that a warrant be issued for Ferguson's arrest because they believed probable cause for Ferguson's arrest existed at that time.[5] Judge James H. Boddie, Jr., signed the arrest warrant on September 25, 2018.[6]

In April 2020, Ferguson was arrested in Ouachita Parish on unrelated charges and was sentenced to seven days in jail and three years' probation on those charges. She was supposed to be released on May 1, 2020; however, she was picked up on this day by UPSO on the outstanding warrant, and then transferred to UPDC.[7] She went through the booking process at UPDC, but Ferguson was transferred to the Louisiana Transitional Center for Women ("LTCW") in Madison Parish, Louisiana, because UPDC did not have facilities for housing females. Ferguson was at UPDC for a matter of hours. Ferguson remained at LTCW until May 27, 2020.

Ferguson contends that she was wrongfully arrested and imprisoned in violation of federal and state law.

On April 29, 2021, Ferguson filed suit in this Court in the above-captioned matter against UPDC; Warden Ray Hanson ("Warden Hanson"); Sheriff Dusty Gates; Detective Roberts; and Cade Nolan. [Doc. No. 6, Complaint].[8] On August 5, 2021, Ferguson moved to substitute Warden Adams in place of Warden Hanson.[9] Ferguson made clear Warden Adams was being sued solely in his official capacity. On August 6, 2021, this Court entered a Judgment dismissing all claims

---

[4] [Doc. No. 39-5, p. 7]
[5] [Doc. No. 40-3]
[6] [Doc. No. 39-5, p. 10]
[7] [Doc. No. 39-5, p. 11-14]
[8] [Doc. No. 6, Complaint]
[9] [Doc. No. 25]

against Warden Hanson with prejudice and substituting Warden Adams, in his official capacity, as a defendant.[10]

The issues have been briefed, and the Court is prepared to issue a ruling.

## II.   LAW AND ANALYSIS

### A.  Summary Judgement

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(A). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

In deciding unopposed summary judgment motions, the Fifth Circuit has noted that a motion for summary judgment cannot be granted simply because there was no opposition. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). The movant has the burden to establish the absence of a genuine issue of material fact and, unless it has done so, the court may not grant the motion, irrespective of whether any response was filed. *Powell v. Delaney*, No.

---

[10] [Doc. No. 27]

4

CIV.A.SA00CA0426NN, 2001 WL 1910556, at *5–6 (W.D. Tex. June 14, 2001). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id*. at 1 and n.2; see also *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). See also*: UNUM Life Ins. Co. of Am. v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("A summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence.").

The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

### B.  Federal Claims

Ferguson contends "[t]he Defendants' conduct constituted wrongful arrest and wrongful imprisonment, in violation of her Fourth and Fourteenth Amendment rights." Ferguson's federal claims were brought under Title 42 USC § 1983, which provides for the recovery of damages when a person is deprived of her federal constitutional or statutory rights by a person acting under color of state law. *See Davidson v. Cannon*, 474 U.S. 344, 106 U.S. 668, 88 L.Ed. 2d. 677 (1986); and *Daniels v. Williams*, 474 U.S. 327, 106 U.S. 662, 88 L.Ed. 2d. 662 (1986). Allegations of mere negligence will not suffice to make out a claim under § 1983. *Id*. An allegedly unlawful arrests procured pursuant to a facially valid warrant does not give rise to liability under 42 USC § 1983. *See Herrera v. Milsap*, 862 F.2d 1157, 1160 (5th Cir. 1989). "A warrant is valid even though the

court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged." *Rodriguez v. Ritchey,* 556 F.2d 1185, 1190 n. 21 (5th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 U.S. 894, 54 L.Ed.2d 799(1978) (cleaned up). "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan,* 443 U.S. 137,145, 99 U.S. 2689, 61 L.Ed.2d 433 (1979); *Maier v. Green*, 485 F. Supp.2d 711, 720 (W.D. La. 2007).

Defendants assert that they are entitled to summary judgment on claims of federal law. The federal claims against each Defendant will be analyzed separately.

### 1. Federal Claims against Warden Adams

Defendants assert that the federal claims should be dismissed against Warden Adams because the claims are redundant of the claims against UPDC. The Court agrees.

A suit against a municipal officer in his official capacity is simply another way of alleging municipal liability, as a judgment in a Section 1983 suit against an officer in his official capacity imposes liability against the entity he represents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55 (1978); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014). "When . . . the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them." *Broussard*, 45 F. Supp. 3d at 571 (*citing Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)).

The claims Ferguson made against Warden Adams are one in the same as those claims she made against UPDC. Therefore, the claims against Warden Adams are **DISMISSED WITH PREJUDICE**.

### 2.  Federal Claims Against UPDC

To hold a municipality or local government unit liable under Title 42 U.S.C. § 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was the cause-in-fact of the deprivation of rights inflicted.  To satisfy the cause in fact requirement, a plaintiff must allege the custom or policy served as a moving force behind the constitutional violation at issue, or that the injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory.  It must contain specific facts.  *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir.1997).

A plaintiff must identify the policy or custom which allegedly caused the deprivation of her constitutional rights.  *Murray v. Town of Mansura*, 76 Fed. App'x 547, (5th Cir. 2003).  A policy may not be inferred.  *Colle v. Brazos County, Tex.,* 981 F.2d 237, 245 (5th Cir. 1993). "Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). "In other words, a plaintiff must show direct causation, i.e., that there was a 'direct causal link' between the policy and the violation." *Id.*

Defendants assert that Ferguson cannot establish municipal liability against UPDC. The Court agrees. Ferguson alleges no allegations in her Complaint indicating that UPDC had a policy or custom, and she has produced no evidence indicating that UPDC's final policymaker maintained an unconstitutional policy that was the moving force behind alleged unconstitutional violations. Accordingly, the federal claims against UPDC are **DISMISSED WITH PREJUDICE**.

### 3.  Federal Claims Against Sheriff Gates

The facts indicate that Ferguson has not brought suit against Sheriff Gates in his official capacity. It appears, however, that Ferguson has sued Sheriff Gates under a theory of *respondeat superior*. Defendants assert that because Sheriff Gates has not been sued in his official capacity, that he would have to be sued in his individual capacity. Defendants assert that Ferguson has not brought forth any facts showing that the Sheriff was involved in the acts alleged giving rise to this suit.

"Plaintiffs suing governmental officials in their individual capacities…must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: the plaintiff must allege specific facts giving rise to constitutional claims." *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002) (citations omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). However, it is clear to the Court that plaintiffs cannot hold a sheriff liable under a theory of vicarious liability for federal civil rights violations allegedly committed by subordinate. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *see also Oliver,* 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

The Court agrees with Defendants. Ferguson did not sue Sheriff Gates in his official capacity, she did not allege facts in her Complaint giving the inference that he could be sued in his individual capacity, and she cannot, under the law, sue Sheriff Gates under a theory of *respondeat superior*. Therefore, the federal claims against Sheriff Gates are **DISMISSED WITH PREJUDICE**.

### 4. Federal Claims Against Detective Roberts

Ferguson alleges federal claims against Detective Roberts for a constitutional violation based on the allegation that Detective Roberts did not have probable cause to arrest her. Defendants assert that Detective Roberts had sufficient probable cause to arrest Ferguson. Defendants state that even had a warrant not been issued, Ferguson's arrest was supported by probable cause because she had been positively identified as a principal in the kidnapping of Johnson by a person directly involved in the kidnapping.

"Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *U.S. v. Antone,* 753 F.2d 1301, 1304 (5th Cir.1985). In short, there need be only a "fair probability that a crime occurred." *United States v. Nunez–Sanchez,* 478 F.3d 663, 666 (5th Cir.2007). Moreover, "the requisite 'fair probability' is something more than a bare suspicion but need not reach the fifty percent mark." *Id.*

Guthrie positively identified Ferguson in this case. He knew her personally, and he was also involved in the kidnapping of Johnson. It is well sounded in Louisiana that an arrest based on a witness' positive identification is presumptively valid. *State v. Castro*, 09-887 (La. App. 5 Cir. 5/25/10), 40 So. 3d 1036, 1046–47, *writ denied*, 2010-1323 (La. 1/7/11), 52 So. 3d 884; *Nash v. State,* 207 So.2d 104 (Miss.1968); *United States v. Porter*, 2016 WL 560595 (E.D.La. Feb. 12, 2016) (principle to a crime positively identified criminal who had illegally sold him a gun). The Federal Seventh Circuit noted in *McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir.1984)*:* "If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded." *See also Daniels*

*v. U.S.,* 393 F.2d 359, 361 (D.C.Cir.1968) (officers have probable cause to arrest if they have "information from some person—normally the putative victim or eyewitness—who it seems reasonable to believe is telling the truth").

The Court finds that Detective Roberts had sufficient probable cause to arrest Ferguson. Therefore, the federal claims against Detective Roberts are hereby **DISMISSED WITH PREJUDICE**.

### C.  State Law Claims

Along with Ferguson's federal claims, she makes claims against the Defendants under state law. Specifically, she makes claims for false arrest, false imprisonment, abuse of process, and civil conspiracy. Each state law claim will be analyzed separately.

#### 1.  State Law Claims Against Warden Adams

Defendants assert that the state law claims made against Warden Adams (and UPDC, which will be analyzed separately) should be dismissed because Warden Adams is not an employer. Ferguson's state law claims against Warden Adams and UPDC are based on a theory of *respondeat superior*. La. Civ. Code Art. 2320 states that "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

Defendants state that in order for La. Civ. Code Art. 2320 to apply here, Warden Adams and UPDC must be "masters" or "employers", and Warden Adams is neither because he does not employ anyone, and all employees working at UPDC are directly employed by UPDC.[11] The Court

---

[11] *See Terrell v. Pichon*, 413 F. Supp. 3d 515, 523 (E.D. La. 2019), *aff'd by* 795 F. App'x 935 (5th Cir. 2020) (dismissing vicarious liability claims against supervisory law enforcement officers because such officers were not "employers" for purposes of Article 2320).

agrees. Warden Adams is not a master or employer, and, therefore, Ferguson's state law claims against him are **DISMISSED WITH PREJUDICE**.

### 2. False Arrest/False Imprisonment

Defendants assert that Ferguson's false arrest and false imprisonment claims are without merit and should be dismissed.

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority." *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977). "The two essential elements are: (1) detention of a person; and (2) the unlawfulness of such detention." *Barry v. Dennis*, 633 So. 2d 806, 808 (La. App. 4 Cir. 1994). Pursuant to Louisiana Code of Criminal Procedure Article 228(A), "[i]t is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked." Under Article 228, the receiving jail is statutorily obligated to book the arrestee.

The Court agrees. Plaintiff has produced no evidence showing that she was wrongfully arrested or falsely imprisoned. She was arrested under a facially valid warrant on the basis of probable cause that was signed by a Judge. The Court has inferred, based on the facts presented, that UPDC staff acted in accordance with the law.

Therefore, Ferguson's state law claims for false imprisonment and false arrest against Defendants are **DISMISSED WITH PREJUDICE**.

### 3. Abuse of Process

Defendants assert that Ferguson's abuse of process claim appears to be predicated on the claim that she was falsely arrested. Defendants also argue that Ferguson has failed to show or

allege that Detective Roberts, UPDC, or Nolan had a nefarious or ulterior motive other than simply following the law in seeking her arrest.

An abuse of process occurs when "the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect." *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors*, 07-610 (La. App. 3 Cir. 3/4/09), 4 So. 3d 1002, 1009 (citation and quotations omitted). To prevail on an abuse of process claim, a plaintiff must prove: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." *Id.*

"The first element, that of ulterior purpose, is similar to the concept of 'malice,' but is a much more demanding test which would not be met by a showing of lack of knowledge or other technical types of malice, but which is only met when the officer is acting for a specific purpose not authorized by law." *Taylor v. State*, 617 So. 2d 1198, 1205 (La. App. 3 Cir. 1993) (emphasis added). "The second criteria, improper use of process, refers to a failure to comply with the proper procedures or rules set out by law for conducting official actions." *Id*. Ferguson, therefore, must show that there was malice plus improper use of process.

The Court finds that Ferguson has presented no evidence of an abuse of process which occurred once that warrant was issued. She has produced no evidence alleging that any of the Defendants utilized the legal process with an ulterior purpose, and she did not allege that anyone of the Defendants willfully failed to comply with proper procedures or rules set out by the law. There is no evidence indicating that the criminal process had been misused by Defendants or anyone else in an effort to attain some improper end. Ferguson was arrested pursuant to a facially valid warrant, and, in due course, Ferguson's criminal charges were allegedly dropped. There have

12

been no facts showing that Ferguson was arrested for any other reason that the issue of the kidnapping of Johnson.

Therefore, Ferguson's state law claims for abuse of process are **DISMISSED WITH PREJUDICE**.

### 4.  Civil Conspiracy

Defendants assert that this claim also fails because Ferguson set forth no allegations of a conspiracy, and there is no evidence showing that any of the Defendants conspired with the others to wrongfully arrest or imprison Ferguson.

Under Louisiana Civil Code Article 2324, anyone who conspires with another to commit an intentional or willful act is liable, in solido, for the damage caused by the offense. Article 2324 "does not by itself impose liability for a civil conspiracy." *Haygood v. Dies*, 49,972 (La. App. 2 Cir. 8/12/15), 174 So. 3d 1211, 1218. To prove a conspiracy under Louisiana state law, a plaintiff must prove that: 1) an agreement existed with one or more persons to commit an illegal or tortious act; 2) the act was actually committed; 3) the act resulted in the plaintiff's injury; and 4) there was an agreement as to the intended outcome or result. *Doe v. Mckesson*, 945 F.3d 818, 826 (5th Cir. 2019) (overturned on other grounds); citing *Crutcher-Tufts Res., Inc. v. Tufts*, 2007-1556 (La.App. 4 Cir. 9/17/08); 992 So.2d 1091, 1094.

The Court finds that Ferguson has provided no evidence proving any elements of a conspiracy existed. Further, Ferguson has not shown any evidence indicating the Defendants acted in such a manner that a conspiracy could be inferred.

Therefore, Ferguson's state law claims for civil conspiracy are **DISMISSED WITH PREJUDICE**.

### 5.  Vicarious Liability against Sheriff Gates

Ferguson has also sued Sheriff Gates under a theory of vicarious liability. This was similarly analyzed in the federal claims section above against Sheriff Gates. Defendants assert that the Plaintiff cannot support a claim against Detective Roberts or Nolan as employers of Sheriff Gates under these facts for tortious acts committed against her.

The principle of vicarious liability is codified in Louisiana Civil Code article 2320, which provides that an employer is liable for the *tortious acts* of its employees "in the exercise of the functions in which they are employed." *Russell v. Noullet*, 98-0816 (La. 12/1/98); 721 So.2d 868, 871. Inherent in this principle is that a tortious act has occurred.

The Court finds that the actions taken by Defendants were reasonable under the circumstances. Therefore, Ferguson's claim for vicarious liability against Sheriff Gates is **DISMISSED WITH PREJUDICE**.

### D.  Qualified Immunity

Defendants assert that in the event the Court were to find that there was an unlawful arrest, which it does not, that the Defendants are entitled to qualified immunity in their individual capacities. Even though the Court has found that Ferguson has produced no evidence to substantiate her federal or state law claims against Defendants, the Court will nevertheless address the issue of qualified immunity.

The doctrine of qualified immunity insulates government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73, L. Ed. 2d 396 (1982).   Qualified immunity is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is permitted to go to trial, thus

qualified immunity questions should be resolved through summary judgment when the underlying facts are not in dispute. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86, L. Ed. 2d 411 (1985). Qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

As indicated by *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed 2d 272 (2001), in determining whether qualified immunity applies, the first inquiry is whether a constitutional right would have been violated on the facts alleged. Only after deciding that question may a court turn to the question whether the right at issue was clearly established at the relevant time. This procedure was subsequently altered to declare that *Saucier's* procedure should not be regarded as an inflexible requirement but noted the *Saucier* procedure is often beneficial. *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

In this case, following the *Saucier* procedure is appropriate. This Court begins with the question of whether a constitutional right would be violated on the facts alleged. The Court has found that there was no constitutional violation in this case. However, it will still analyze whether the Defendants are entitled to qualified immunity if it were found that there was a constitutional violation here.

The inquiry requires analyzing the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). This question is analyzed from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. Police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id*. at 396-397.

The Court can decide one question or both under *Saucier*.[12]  The dispositive question is whether the violative nature of the particular conduct is clearly established.  *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).  That is because qualified immunity is inappropriate only where the officer had "fair notice" in light of the specific context of the case, not as a broad general proposition, that his particular conduct was unlawful.  *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004).

The burden of proof in a Section 1983 action is on the plaintiff.  The burden is heavy.  A right is "clearly established" only if relevant precedent has placed the constitutional questions beyond debate.  *Ashcroft v al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

As to the first prong of the qualified immunity analysis, the Court adopts its analyses above. The arrest was legal. There was no false imprisonment, no false arrest, no abuse of prosecution, and no civil conspiracy.  Therefore, there could be no Constitutional violation and Defendants are entitled to qualified immunity in their individual capacities. As to the second prong, the Court finds that Defendants were acting in good faith with a reasonable belief in the propriety of their actions, having reasonably relied on the prevailing case law shown above to believe that arresting a suspect based upon a positive identification by a person involved in the crime at issue, was lawful and constitutional.

## III.    CONCLUSION

For the reasons set forth herein, Defendants' Motions for Summary Judgment [Doc. Nos. 39 and 40] are hereby **GRANTED**, and all of Plaintiff's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

---

[12] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

16

MONROE, LOUISIANA, this 12th day of May 2022.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**